UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER D. RANALLI,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

CASE NO. 2:15-cv-14039

HON. MARIANNE O. BATTANI

**OPINION AND ORDER OVERRULING PLAINTIFF'S
OBJECTIONS, ADOPTING THE REPORT AND RECOMMENDATION,
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Before the Court are Plaintiff Christopher Ranalli's objections to the Magistrate Judge's Report & Recommendation ("R&R"). (Doc. 24). Magistrate Judge David R. Grand considered the parties' cross motions for summary judgment and, on November 7, 2016, entered an R&R. (Doc. 23). In the R&R, Magistrate Judge Grand recommended that the Court grant the Commissioner's motion for summary judgment, deny Plaintiff's motion for summary judgment, and affirm the Administrative Law Judge's decision. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the R&R, **GRANTS** the Commissioner's Motion for Summary Judgment (Doc. 20), and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 17).

## II. STATEMENT OF FACTS

As the parties have not objected to the R&R's summary of the facts and procedural history, the Court adopts that portion of the R&R.  (See Doc. 23, pp. 2-11).

### III. STANDARD OF REVIEW

#### A. Objections to a Magistrate Judge's R&R

A district court must conduct a *de novo* review of the portions of a magistrate judge's report and recommendation to which a party objects.  28 U.S.C. § 636(b)(1).  The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge.  Id.  The requirement of *de novo* review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure."  United States v. Shami, 754 F.2d 670, 672 (6th Cir. 1985).  Accordingly, Congress enacted 28 U.S.C. § 636(b)(1) to "insure[ ] that the district judge would be the final arbiter" of a matter referred to a magistrate.  Flournoy v. Marshall, 842 F.2d 875, 878 (6th Cir. 1987).

The Sixth Circuit has made clear that "[o]verly general objections do not satisfy the objection requirement."  Spencer v. Bouchard, 449 F.3d 721, 725 (6th Cir. 2006).  Only specific objections are entitled to *de novo* review; vague and conclusory objections amount to a complete failure to object as they are not sufficient to pinpoint those portions of the R&R that are legitimately in contention.  Mira v. Marshall, 806 F.2d 636, 637 (6th Cir.1986) (per curiam).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."  Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the

2

magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." Spencer, 449 F.3d at 725 (quoting Miller, 50 F.3d at 380).

### B. Standard of Review Applicable to Social Security Cases

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). There is no requirement, however, that either the Commissioner or this Court discuss every piece of evidence in the administrative record. Kornecky v. Comm'r of Soc. Sec., 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007).

**IV. DISCUSSION**

    **A. The Residual Functional Capacity**

Plaintiff first contends that the Magistrate Judge erred in failing adequately to address his contentions regarding the residual functional capacity ("RFC") findings made by the Administrative Law Judge ("ALJ"). Plaintiff observes that the only medical source to have rendered an RFC opinion was consultative examiner Jack Salomon, M.D. That opinion suggested physical limitations greater than those adopted by the ALJ in forming the RFC (see Tr. 659); however, the ALJ afforded this opinion "less than significant weight," (Tr. 26). Plaintiff thus contends that the ALJ impermissibly "played doctor" by substituting his own lay opinion for the RFC.

The same argument was raised before and considered by the Magistrate Judge. The Magistrate Judge accurately noted that the ALJ provided specific reasons for assigning Dr. Salomon's opinion less than significant weight, including lack of adequate support and inconsistency with his own objective examination findings. (Doc. 23, pp. 17-18). Specifically, the R&R states:

> For example, the ALJ recognized that Dr. Salomon identified abnormalities, including an inability to squat, difficulty walking on heels and toes, a fine tremor of the hands, and relative weakness of the right knee. (Tr. 26, 655). However, the ALJ explained that Dr. Salomon also noted that Ranalli had no atrophy of the muscles, a good grip, was able to walk heel to toe [though with some difficulty], and was able to use his hands to perform fine and gross manipulations. (Tr. 26, 655).

(Id.). Further, the ALJ reasoned that Dr. Salomon's opinion that Plaintiff would be unable to travel without a companion was inconsistent with: "(1) Ranalli's own report that it was financial difficulties – rather than any medical condition – that prevented him from using public transportation; and (2) his repeated statements that he was

independent in his activities of daily living. (Tr. 18, 382-84, 543, 667, 734, 764, 865, 936)." (Id. at p. 18). Further, as noted in the R&R, the ALJ observed that Dr. Salomon failed to complete the sections of the form requesting identification of the particular medical or clinical findings supporting his assessment. (Id.). Accordingly, the Magistrate Judge found the ALJ's discussion determining the amount weight to accord Dr. Salomon's opinion to be appropriate. With respect to Plaintiff's contention that the ALJ impermissibly "played doctor" by failing to rely on any other medical opinion in rejecting Dr. Salomon's RFC opinion, the R&R concludes:

> Again, this argument fails where the ALJ considered all of the evidence presented – including Ranalli's statements, the objective medical evidence, and the medical opinions of record – to develop a physical RFC that included the limitations he believed appropriate. (Tr. 20-26). *See Coldiron* [*v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).]

(Id.).

In Plaintiff's present motion, he argues that the Magistrate Judge simply offers post-hoc rationalizations on behalf of the ALJ. To the contrary, the R&R relies solely on the reasoning set forth in the ALJ's decision and not on after-the-fact rationalizations made on behalf of the ALJ. To the extent that Plaintiff contends that the ALJ failed to discuss any specific inconsistencies, the portions of the R&R quoted above clearly demonstrate this is not the case. Likewise, Plaintiff contends that the R&R provides no explanation why the ALJ was justified in rejecting Dr. Salomon's opinion that he required him to travel with a companion. Again, the portions of the R&R quoted above contradict this argument.

Further, the RFC is supported by the substantial evidence of record, as aptly summarized in the R&R. After his second surgery on his right femur to remove the

5

giant cell tumor, Plaintiff followed up on June 28, 2011, with Ronald B. Irwin, M.D., his orthopedic surgeon. (Tr. 854).

> Ranalli then returned to see Dr. Irwin for the last time on June 28, 2011; at that time, he had good range of motion with mild patellofemoral crepitation, so physical therapy was ordered to aid in strengthening his quadriceps. (Tr. 854). After this visit to Dr. Irwin, Ranalli did not seek any further medical treatment until he returned to see Dr. Wein in January of 2013 for a routine physical examination and with complaints of heartburn. (Tr. 843-45). Follow-up visits in March and April of 2013 were unremarkable. (Tr. 839-42). When Ranalli returned to Dr. Wein in August of 2013, he reported pain in his left knee that was, at times, worse than his right knee pain, which made him concerned that he might have a tumor in his left knee. (Tr. 837-38). X-rays showed only arthritic changes, however, so he was prescribed Ultram and support stockings in addition to Mobic. (*Id.*). At his next visit, in September of 2013, Ranalli reported no improvement, so Dr. Wein advised him to use his cane regularly to take pressure off of the knee, indicating that Neurontin would be considered if the issue worsened. (Tr. 835-36). At a return visit in December of 2013, Ranalli reported that he was "doing well" and had no complaints other than chronic knee and leg pain from his history of surgery and arthritis. (Tr. 980-81). In March of 2014, Dr. Wein performed a routine physical, noting that Ranalli's symptoms included only occasional muscle aches. (Tr. 977-79). He last saw Dr. Wein in June of 2014, reporting an increase in right leg pain; Dr. Wein prescribed Norco and referred Ranalli to an oncologist to make sure there was no recurrence of his tumor. (Tr. 972-73).

(Doc. 23, pp. 6-7). The record therefore demonstrates that for the extended period between June 2011 and January 2013, Plaintiff went without medical treatment and did not complain again of knee pain until August 2013. The objective diagnostic testing reveals only arthritic changes, and his pain is being conservatively managed with medication. Though the RFC does not account for the documented limitation that Plaintiff must use a cane to ambulate, this additional limitation would not impact the jobs the Vocational Expert ("VE") testified Plaintiff would be able to perform. Specifically, the VE testified that Plaintiff would be able to perform the job of hand packer. (Tr. 27). When a different VE was questioned at an earlier oral hearing regarding whether use of

a cane would affect the list of possible jobs Plaintiff could perform, which also included hand packer, the VE stated that it would not. (Tr. 107). Consequently, substantial evidence supports the ALJ's RFC determination and does not indicate any additional limitations.

The Court also agrees with the Magistrate Judge's conclusion that the ALJ did not impermissibly "play doctor." "The Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC." Coldiron, 391 F. App'x at 439. See also 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."). Where an ALJ properly reviewed and weighed the evidence of record and where the legal determinations are supported by substantial evidence, allegations that he impermissibly "played doctor" are unavailing. See, e.g., Gibbens v. Comm'r of Soc. Sec., 659 F. App'x 238, 2016 U.S. App. LEXIS 15198, at *19-20 (6th Cir. 2016); Griffith v. Comm'r of Soc. Sec., 582 F. App'x 555, 562 (6th Cir. 2014). Here, as discussed above, the ALJ's RFC findings are supported by substantial evidence.

Finally, Plaintiff contends that if the ALJ found Dr. Salomon's report to be ambiguous or inadequately explained, the ALJ should have re-contacted the doctor instead of simply rejecting the opinion. However, an ALJ is not required to re-contact a consultative examiner whose opinion is not sufficiently supported by objective medical evidence. See Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 274 (6th Cir. 2010) (where a treating source's "opinion was deemed unpersuasive not because its bases were unclear, but because they were not corroborated by objective medical evidence,"

there was no obligation to re-contact the treating physician). Indeed, Social Security Ruling 96-5p requires the ALJ to re-contact only a *treating* source – and not a consultative examiner – if that source's opinion is unclear. Here, Dr. Salomon is not a treating source, nor did the ALJ find his opinion to be unclear but simply unsupported by objective findings. Therefore, there was no obligation to re-contact.

### B. Obesity Analysis

Plaintiff also contends that the ALJ did not properly consider his obesity in combination with his other impairments, as required by Social Security Ruling 02-1p. Plaintiff claims that the Magistrate Judge erred by failing to address the "detailed guidance" set forth in SSR 02-1p with respect to how an ALJ is to assess obesity in conjunction with other impairments.

The R&R aptly summarizes the guidance offered in SSR 02-1p. (Doc. 23, pp. 20-21). It notes that obesity is recognized "as 'a risk factor' that increases an individual's chances of developing impairments and notes that obesity often complicates chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems." (Id. at 21). As acknowledged in Plaintiff's own objections (Doc. 24, p. 5), the R&R states that the ruling "does not mandate a particular mode of analysis for an obese claimant." (Doc. 23, p. 21 ) (citing Bledsoe v. Barnhart, 165 F. App'x 408, 411-12 (6th Cir. 2006)). Nonetheless, the ALJ must do more than reference the fact of Plaintiff's obesity in passing, Shilo v. Comm'r of Soc. Sec., 600 F. App'x 956, 959 (6th Cir. 2015) (citing Norman v. Astrue, 694 F.Supp.2d 738, 741-42 (N.D. Ohio 2010)), and must "consider the claimant's obesity, in combination with other impairments, at all stages of

the sequential evaluation," Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 577 (6th Cir. 2009).

The Magistrate Judge then evaluated the ALJ's consideration of Plaintiff's obesity:

> In this case, it is clear that the ALJ considered the effects of Ranalli's obesity. As an initial matter, the ALJ specifically found that Ranalli's obesity was a severe impairment. (Tr. 17). In addition, here, as in *Bledsoe*, the ALJ not only specifically recognized SSR 02-1p but also explicitly discussed treatment records with findings regarding obesity and weight gain. (Tr. 17, 21, 24, 655, 841). For example, the ALJ identified Ranalli as "clinically obese" with a BMI of 38.7 when he weighed 240 pounds at the consultative examination in May of 2011.4 (Tr. 21, 655). Moreover, the ALJ limited Ranalli to light work with additional restrictions related to standing, walking, postural activities, commercial driving, and the use of foot controls. (Tr. 20). Ranalli has not even asserted – let alone pointed to specific evidence demonstrating – that his obesity increased the severity of his other impairments or affected his functioning to a greater extent than reflected in the ALJ's RFC finding. For these reasons, Ranalli simply has not shown that the ALJ erred in considering the functional effects of his obesity. *See, e.g.*, *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 667 (6th Cir. 2004) (finding that the ALJ took Essary's obesity into account and the "absence of further elaboration on the issue of obesity likely stems from the fact that Essary failed to present evidence of any functional limitations resulting specifically from her obesity").

(Doc. 23, pp. 21-22). Plaintiff has not offered any specific objections regarding the Magistrate Judge's analysis. Accordingly, the Court is not obligated to reassess the identical arguments presented before the Magistrate Judge with no identification of error in the Magistrate Judge's recommendation. See, e.g., Owens v. Comm'r of Soc. Sec., No 1:12-47, 2013 U.S. Dist. LEXIS 44411 (W.D. Mich. Mar. 28, 2013) ("Plaintiff's objections are merely recitations of the identical arguments that were before the magistrate judge. This Court is not obligated to address objections made in this form because the objections fail to identify the *specific* errors in the magistrate judge's

9

proposed recommendations."); Davis v. Caruso, No. 07-10115, 2008 U.S. Dist. LEXIS 13713, at *5 (E.D. Mich. Feb. 25, 2008) (denying an objection to an R&R where Plaintiff "merely rehash[ed] his arguments" made before the Magistrate Judge).  Accordingly, Plaintiff's arguments are unavailing, and the Court adopts the analysis and conclusions set forth in the R&R.

## V. CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the R&R, **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Date:   March 3, 2017

s/Marianne O. Battani
MARIANNE O. BATTANI
United States District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 3, 2017.

s/ Kay Doaks
Case Manager